

## United States Bankruptcy Court
NORTHERN DISTRICT OF ILLINOIS
219 S Dearborn Street
Chicago, IL 60504

**Kenneth S. Gardner**, Bankruptcy Clerk

Date     __01/25/2007__

Michael Dobbins, Clerk
United States District Court
Northern District of Illinois
219 S Dearborn Street
Chicago, IL 60604

Case Number     __05 B 64075__

Case Name     __Leo Stoller__

Notice of Appeal Filed     __01/05/2007__

Appellant     _____

Dear Sir:

Pursuant to **Bankruptcy Rule 8007** transmitted herewith is the Record on Appeal. The Record on Appeal consist of:

| | | | |
|---|---|---|---|
| ☐ | Transmittal Letter and Civil Cover Sheet | ☑ | Supplemental to the Record |
| ☐ | Designation | ☐ | Notice of Appeal |
| ☐ | Statement of Issues | ☐ | Copy of Documents Designated |
| ☐ | Transcript of Proceeding | ☐ | Exhibits |
| | | ☐ | Expedited Notice of Appeal |
| | | ☐ | Certified Copy of Docket Sheet |

Additional Items Included

☐ _____

_____

☐ Total Volumes Transmitted

The following items will be transmitted as a supplemental to the Record on Appeal

☑ Appellee Designation of Contents for Inclusion in Record and Statement of

Issues for Pure Fishing and Transcript of Proceedings before The Honorable Jack B Schmetterer 12/12/2006 10:30 am

Previous D C Judge     **Hibbler**     Case Number     07 C 0092

By Deputy Clerk _____

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 05 B 64075 |
| | ) | |
| | ) | Chapter 7 |
| LEO STOLLER, | ) | |
| | ) | Honorable Jack B. Schmetterer |
| Debtor. | ) | |
| | ) | District Court Case No. 07-CV-0092 |

## STATEMENT AND RESERVATION OF RIGHTS OF PURE FISHING, INC. IN LIEU OF COUNTER-DESIGNATION OF ADDITIONAL ITEMS FOR RECORD ON APPEAL

Pure Fishing, Inc, submits the following Statement and Reservation of Rights in Lieu of Its Counter-Designation of Additional Items for Record on Appeal:

### BACKGROUND

1.     On December 20, 2005 (the "Petition Date"), the Debtor in the captioned case filed a voluntary petition in this court for relief under Chapter 13 of the Bankruptcy Code. The Debtor's case was converted to a case under Chapter 7 on September 1, 2006 (the "Conversion Date"). A Trustee was duly appointed on September 6, 2006, to administer the Debtor's estate (the "Estate").

2.     Since the Conversion Date, the Debtor has filed approximately four Notices of Appeal with the Clerk of the Bankruptcy Court, in which the Debtor endeavors to appeal approximately eleven separate orders entered by the Bankruptcy Court. On information and belief, the Debtor has indicated that he will continue to appeal every order of the Bankruptcy Court that he opposed, until he is able to reach a settlement of his bankruptcy case with the Trustee and creditors. On or about January 5, 2007, the Debtor filed the notice of appeal that gave rise to Appeal No. 07-0092.

3. Pure Fishing has already filed three motions to dismiss prior appeals filed by the Debtor. Briefing on those motions is ongoing. One motion alternatively seeks clarification of various appellate procedures. One of the grounds for seeking to dismiss the pending appeals is that the Notice of Appeal references more than one separate matter or order. The same issue is present in connection with the notice of appeal that commenced Appeal No. 07-0092.

4. In light of the pending motions to dismiss and the request for clarification, and to avoid additional confusion and procedural uncertainty, rather than submitting a counter-designation of the Record on Appeal in Appeal No. 07-0092, Pure Fishing hereby submits this Statement in Lieu of its Counter-Designation of Additional Items for the Record on Appeal, and thereby expressly reserves its right to supplement or amend this statement and to appropriately respond to any and all appeals and file any additional counter-designations after the Court rules on the pending motions to dismiss and/or provides clarification of the appropriate appellate procedure when, like here, the notice of appeal references more than one discrete matter.

Dated: January 17, 2007                           Respectfully Submitted,


                                                  Pure Fishing, Inc.


                                                  By:/s/William J. Factor
                                                     One of Its Attorneys

William J. Factor (6205675)
Sara E. Lorber (6229740)
SEYFARTH SHAW LLP
55 East Monroe Street, Suite 4200
Chicago, Illinois 60603
Tel: (312)346-8000
Fax: (312)269-8869
wfactor@seyfarth.com
slorber@seyfarth.com

Lance G. Johnson
ROYLANCE, ABRAMS, BERDO & GOODMAN, L.L.P.
1300 19th Street, N.W., Suite 600
Washington, DC 20036
Tel: (202) 659-9076
Fax: (202) 659-9344

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on this 17th day of January, 2007, he

caused a copy of the attached **Statement and Reservation of Rights of Pure Fishing In Lieu of**

**Counter-Designation of Additional Items for Record on Appeal**, to be served upon the

following persons via the manner indicated.

_____/s/____William J. Factor_____

## Service List

(U.S. Mail prepaid)
Richard N. Golding
Law Office of Richard N. Golding,
500 North Dearborn Street
2nd Floor
Chicago, IL 60606

(U.S. Mail prepaid)
Stephen G. Wolfe
Assistant United States Trustee
Office of the United States Trustee
227 West Monroe Street
Suite 3350
Chicago, IL 60606

(U.S. Mail prepaid and email)
Leo Stoller
7115 W. North Avenue, #272
Oak Park, Illinois 60302

(U.S. Mail prepaid)
Richard M. Fogel
Janice Alwin
Shaw, Gussis, Fishman, Glantz,
   Wolfson & Tobin LLC
321 North Clark Street
Suite 800
Chicago, Illinois 60610

(U.S. Mail prepaid)
William J. Barrett
Barack, Ferrazzano, Kirschbaum,
Perlman & Nagelberg, Llp
333 West Wacker Drive, Suite 2700
Chicago, Illinois 60606

(U.S. Mail prepaid)
Michael T. Zeller
Quinn Emanuel Urquhart Oliver & Hedges, Llp
865 South Figueroa Street, Tenth Floor
Los Angeles, CA 90017

(U.S. Mail prepaid)
Melvin J. Kaplan
Bennett A. Kahn
Melvin J. Kaplan & Associates
14 E. Jackson Blvd., Suite 1200
Chicago, IL 60606

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LEO STOLLER,                        }   No. 05B64075
                                    }   Chicago, Illinois
                                    }   December 12, 2006
                        Debtor.     }   10:30 a.m.

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JACK B. SCHMETTERER

APPEARANCES:

Trustee:                       Mr. Richard Fogel;

For the Trustee:               Ms. Janice Alwin;

For Google, Inc.:              Mr. William Barrett;

For Pure Fishing:              Mr. William Factor;
                               Mr. Lance Johnson;

ALSO PRESENT:

Mr. Leo Stoller,
    Pro Se.

2

1          THE CLERK:  Stoller, 05-64075.

2          MR. STOLLER:  Good morning, Judge.  Leo

3   Stoller, debtor, pro se.

4          MS. ALWIN:  Good morning, Your Honor.  Janice

5   Alwin on behalf of the trustee.

6          MR. FOGEL:  Good morning, Your Honor.

7   Richard Fogel, the trustee.

8          MR. BARRETT:  Your Honor, William Barrett for

9   Google, Inc.

10          MR. FACTOR:  Good morning, Your Honor.

11   William Factor and Lance Johnson for Pure Fishing.

12          THE COURT:  As for Google, there is a motion

13   of Google, this is old business, for an order declaring

14   the proposed suit to be outside the scope of the stay.

15   Didn't I deal with that?

16          MS. ALWIN:  Draft order to follow, Your

17   Honor.

18          MR. FOGEL:  Draft order to follow for today.

19          THE COURT:  Oh, is this the order here?

20          MR. BARRETT:  Your Honor, if I --

21          THE COURT:  Do you have an order?

22          MR. BARRETT:  Yes.  Google has the order.

23          MR. STOLLER:  Your Honor, if I may say, this

24   is the motion that Google filed.  I didn't receive this

25   until about two days ago and I filed --

3

1   THE COURT:  This motion?

2   MR. STOLLER: . This was a motion, the motion

3   we're talking about here, and it's about 300 pages.  And

4   I didn't receive it until two days ago.  And I filed an

5   objection.

6   THE COURT:  I have not received any 300-page

7   motion, so I'm not passing on what you're talking about.

8   MR. STOLLER:  This is the motion --

9   THE COURT:  I can't help it.  That is not

10  what I'm ruling --

11  MR. STOLLER:  -- that you're ruling on today.

12  THE COURT:  No, it isn't.  The motion we're

13  talking about was presented here August 25th.

14  MR. STOLLER:  That's this one.

15  THE COURT:  And it's not 300 pages.

16  MR. BARRETT:  Your Honor, if I may, the

17  motion with all the exhibits is a binder, motion --

18  document that the court has before it right now.  I know

19  when we were here in August we had this complete binder

20  and it was offered to the court.  The court at that time

21  had the complete set.

22  THE COURT:  I see.

23  MR. BARRETT:  We did serve -- we're very

24  careful, last August, about serving -- we had multiple

25  addresses for Mr. Stoller.  I have one return package

4

1   here.

2               THE COURT:  You have what and what?

3   According to the service list, it was addressed to

4   Mr. Stoller at 7300 West Fullerton, Elmwood Park.

5                       Was that your home?

6               MR. STOLLER:  No.  That was a post office

7   mailing address which I have not used and discontinued.

8   And I've just first been notified of this motion, and I

9   filed a proper response to it with the court.  And I

10  would like to be able to make an objection to the entry

11  of any order regarding the motion because I never had

12  it.

13              THE COURT:  You're representing yourself.

14              MR. STOLLER:  Yes.

15              THE COURT:  I understand that.  Now have you

16  filed a response to this?

17              MR. STOLLER:  Yes, I have filed a response.

18              THE COURT:  Have you served it?

19              MR. STOLLER:  Yes, and I served it.

20              THE COURT:  Did you get it?

21              MR. BARRETT:  I saw it this morning in court.

22              THE COURT:  You did not get it?

23              MR. BARRETT:  Not before this morning.

24              THE COURT:  Have you served it?

25              MR. STOLLER:  Yes.

5

1          THE COURT:  -- means delivered and how?

2          MR. STOLLER:  I mailed it by first class

3  mail.

4          THE COURT:  When?

5          MR. STOLLER:  On the 9th of --

6          THE COURT:  Three days ago?

7          MR. STOLLER:  Three days ago.

8          THE COURT:  Obviously nobody has received it.

9          MR. STOLLER:  And I handed him a copy of it,

10  as he's handed me a copy of his response.

11          THE COURT:  Counsel, did you receive it?

12          MR. BARRETT:  Your Honor, I just saw it this

13  morning in court.

14          THE COURT:  Yes or no to received it.

15          MR. BARRETT:  I received it in the courtroom

16  this morning, yes.

17          THE COURT:  Thank you.  May I have a copy,

18  please.

19          MR. STOLLER:  Yes.

20          MR. BARRETT:  Your Honor, also at the time

21  that the motion was filed the debtor was represented by

22  Mr. Golding, who did receive a copy of this package.

23          THE COURT:  I know, but Mr. Stoller has

24  listed on his bankruptcy schedules a certain address --

25          MR. BARRETT:  I believe --

6

1           THE COURT:  And that's the address that

2    you're entitled then to serve notice on unless and until

3    a change of address is filed.

4                     Have you ever filed a change of

5    address?

6           MR. STOLLER:  Yes, I have, Judge.

7           THE COURT:  And when did you file that

8    address -- time, rather?

9           MR. STOLLER:  Probably within the last 30

10   days.

11          THE COURT:  Okay.

12          MS. ALWIN:  Your Honor, there's no change of

13   address on the docket that I'm aware of.

14          THE COURT:  Do you have a copy of your change

15   of address?

16          MS. ALWIN:  And we have not received one.

17          MR. STOLLER:  Yes.  I don't have it with me,

18   but I did file it.

19          THE CLERK:  I will check the docket.

20          THE COURT:  Did you find it?

21          THE CLERK:  I am checking it now.

22          THE COURT:  We'll check the docket.

23                  Trustee, have you looked at this order?

24          MS. ALWIN:  Yes.  The motion -- we have, Your

25   Honor.  The order?  Proposed order?

7

1          THE COURT:  Order.  Have you looked at this
2     order?
3          MS. ALWIN:  I've looked at the proposed order
4     by -- yes, Your Honor.  We have no objection.
5          THE COURT:  You think that the claims that he
6     wishes to file arose after commencement of the
7     bankruptcy case?
8          MS. ALWIN:  Yes, Your Honor.
9          MR. FOGEL:  We had a hearing on this matter
10    last week and there was an objection to the settlement
11    motion raised by Mr. Stoller, which you overruled and
12    had it today for draft order to follow in connection
13    with that ruling.
14          THE COURT:  Was this the case in which I said
15    that I'll reserve --
16          MR. FOGEL:  Yes.
17          THE COURT:  -- I was going to reserve
18    jurisdiction?
19          MR. FOGEL:  You were reserving jurisdiction.
20    You were reserving the right to modify the order --
21          THE COURT:  This order does not say -- this
22    proposed order doesn't say that.
23          MR. FOGEL:  The order approving the
24    settlement --
25          MS. ALWIN:  I have a copy if Your Honor needs

8

1    one.

2              MR. FOGEL:  -- does say that.  This order

3    is -- this is the order to modify the stay as a result

4    of the approval of that settlement.

5              MR. BARRETT:  If I may eliminate some --

6              THE COURT:  I see, to let them go forward.

7    All right, now I recall.  The idea was I could withdraw

8    that which, in effect, wiped out his rights permanently

9    if this case gets dismissed.  But in the meantime the

10   stay would be modified --

11             MR. FOGEL:  Yes.

12             THE COURT:  -- so that the suit could go

13   forward.  I think that's what you're talking about.

14             MR. STOLLER:  I would like to make an

15   argument to the contrary, which I have never, as far as

16   removing the stay.

17             THE COURT:  Well, hang on a second, sir.  All

18   right.  What was that last thing you said?

19             MR. STOLLER:  I would like to make an

20   argument against removing the stay and allowing them to

21   file a district court case against me.

22             THE COURT:  Just a moment, please.  Let me

23   have your big black book binder with all those exhibits.

24                  Is there a proposed lawsuit attached to

25   this?

9

1          MR. BARRETT:  Yes, Your Honor.  The lawsuit
2     is Exhibit 1.
3          THE COURT:  All right.  Just for the record,
4     my clerk informs me that she finds no change of address
5     form filed by you, Mr. Stoller.  If you wish to file
6     one, everybody is going to be bound by it.  If you file
7     one and serve it on everybody, they'll be bound to give
8     you notice at your address.  But right now your only
9     address on the record is 7300 West Fullerton.
10          MR. STOLLER:  Okay, Judge.
11          THE COURT:  Now what exhibit would I find
12     your proposed complaint, sir?
13          MR. BARRETT:  Exhibit 1.
14          THE COURT:  I'm on page two and it appears
15     you have a suit that refers to activity that took place
16     prior to the filing of the bankruptcy.  Am I right?
17          MR. BARRETT:  Your Honor, the suit does refer
18     to activity that took place prior to the filing, that's
19     right.  That is necessary in order to state a claim
20     under the RICO statute.
21          THE COURT:  Right.  But, therefore, the order
22     I have been handed is not right.
23          MR. BARRETT:  Well, Your Honor, to make a
24     claim under the RICO statute you need to allege two
25     things.  You need to allege two predicate acts, that the

10

1   claims arise under two predicate acts.  Those acts, at
2   least the second act occurred post-petition.
3              THE COURT:  I'm not questioning what's right
4   to plead under that act.  What I'm questioning is the
5   order you want me to approve.  You say the claims of
6   Google first arose after the commencement of this case.
7   Evidently they did not.
8              MR. BARRETT:  Your Honor, I have a time line.
9              THE COURT:  There may be a good reason to
10  modify the stay, but since the activities you complain
11  of started before the case began, it seems to me that I
12  cannot use that reason.
13             MR. BARRETT:  If I can just address that a
14  second, the claim that -- and I use the word activities,
15  the activities that gave rise to the claim, the actual
16  claim, occurred post-petition.  The complaint does refer
17  to activities that occurred pre-petition as part of the
18  allegations about pattern racketeering activity.  The
19  claim Google has, though, is not based on that historic
20  pattern.  It must allege and plead that pattern to state
21  a RICO claim.  I have a time line here if the court
22  would like to see it of the acts that relate to Google's
23  actual claim and how it fits in with the filing of the
24  case.
25             THE COURT:  You have a history here.  Like so

11

1 | many people that come here you want to fire a shotgun
2 | and give a huge history and then you give me a
3 | pinpointed order that pretends as though the history
4 | prior to the filing of the bankruptcy is not alleged.
5 | MR. STOLLER:  Are you addressing that to me,
6 | Judge?
7 | THE COURT:  No.
8 | MR. BARRETT:  Your Honor, it is alleged.  You
9 | could never state a RICO claim in these circumstances
10 | against the debtor.
11 | THE COURT:  All right.  I have to have a
12 | basis for modifying the stay because part of the
13 | activity that you wish to sue on occurred
14 | pre-bankruptcy.
15 | MR. BARRETT:  And, Your Honor, I could
16 | address the alternative relief in the motion, which is
17 | relief Google is seeking, which is injunctive relief for
18 | false advertising; wrongful competition; and violation
19 | of the RICO statute, which the predicate offense is mail
20 | fraud, wire fraud, and extortion.  That is the type of
21 | relief most appropriately entered by the district court.
22 | MR. STOLLER:  I'd like to be able to --
23 | THE COURT:  You are arguing there is cause to
24 | modify the stay.
25 | MR. BARRETT:  As an alternative, yes.

12

1    THE COURT:  Okay.  I'll entertain that

2  motion.  Now I have already approved the settlement.

3    MS. ALWIN:  Yes, Your Honor.  An order has

4  been entered.  Would you like a copy?

5    MR. BARRETT:  And if I could just maybe

6  address some confusion.  The settlement addresses claims

7  of Google against the estate and the assets administered

8  by the trustee.  Today we are dealing with Mr. Stoller

9  as the individual debtor.

10    THE COURT:  I understand.  If we permit this

11  to go forward, of course, he can find some way, if he

12  can, to defend himself.

13    MR. BARRETT:  That's right.

14    THE COURT:  What this does is take it out of

15  the bankruptcy.  The suits are also against Central

16  Manufacturing and Stealth.

17    MS. ALWIN:  That has been resolved as part of

18  the settlement order.

19    THE COURT:  As part of the settlement?

20    MS. ALWIN:  Yes, Your Honor.

21    THE COURT:  Mr. Stoller, I've read your

22  response.  Is there anything you want to add to it?

23    MR. STOLLER:  Yes, I do, Judge, is the fact

24  that all of the acts of which they're complaining of,

25  and I need at least two minutes for you to indulge me

13

1  because this is a very serious issue, what they're

2  complaining of is I wrote three settlement letters under

3  408 to try to resolve a registerability issue and I

4  brought a petition to cancel against Google's

5  registration based on the fact that it's generic or

6  descriptive.  From those three acts, which all occurred

7  prior to the filing of the bankruptcy, they have

8  construed and concocted this very serious charge, the

9  RICO charge.

10             Under the trademark law, there is no

11 statutory reason why when we're dealing with just a

12 registerability issue, I didn't threaten their

13 customers, I didn't threaten -- only the cancelation of

14 their mark --

15             THE COURT:  I've got to interrupt you and

16 tell you I'm not here to decide the merits of that.

17             MR. STOLLER:  Okay, but I just want to point

18 that out.  The other thing that's --

19             THE COURT:  The only question is whether I

20 should modify the stay --

21             MR. STOLLER:  Right.

22             THE COURT:  -- so they can litigate against

23 you.

24             MR. STOLLER:  And here's why I'm going to

25 suggest you shouldn't.  The purpose of the stay is to

14

1  give a creditor a respite from litigation.  We're trying

2  to resolve this bankruptcy issue.  And I had a meeting

3  yesterday with the trustee and I think it's possible

4  that we'll be able to resolve the bankruptcy issue.

5       THE COURT:  In the event the bankruptcy issue

6  were resolved, what would happen to the bankruptcy do

7  you think?

8       MR. STOLLER:  What would happen would depend

9  on the ultimate resolution.

10      THE COURT:  Yes.

11      MR. STOLLER:  My hope is --

12      THE COURT:  Might the bankruptcy be

13  dismissed?

14      MR. STOLLER:  That it might be dismissed,

15  yes, and my creditors could be paid.

16      THE COURT:  Well, but this particular

17  creditor, if the bankruptcy is dismissed, would be free

18  to sue you anyway, right?

19      MR. STOLLER:  If the bankruptcy were to be

20  dismissed and I was able to regain control of my

21  corporations and be in business again, they could sue

22  me.  However, the predicate acts of which they're

23  complaining about are no longer taking place because I'm

24  not in control of my business.  For them to bring these

25  charges against me now when I am not pursuing the

15

1  petition to cancel, I'm not writing letters to them, the

2  trustee is in charge of the corporations --

3          THE COURT:  Let me pause for that.  Is one of

4  the corporations Central Manufacturing?

5          MR. STOLLER:  Yes.

6          THE COURT:  Which has some other names.

7          MR. STOLLER:  Stealth Industries, Inc.

8          THE COURT:  Stealth Industries, also

9  Rentamark.

10          MR. STOLLER:  Correct.

11          THE COURT:  Right?

12          MR. STOLLER:  Right.  In other words, what

13  relief they're seeking, Judge --

14          THE COURT:  I understand.  Let me ask the

15  trustee something.  He wants to -- if we modify the stay

16  then, of course, Stoller can be sued but also these

17  corporations.  Do you take the view that he has no right

18  to represent the corporations or hire a lawyer to

19  represent the corporations?

20          MR. FOGEL:  I take that view, yes, because as

21  part of the settlement there is no relief being sought

22  against the estate or the entities.  There is no

23  monetary relief being sought against them.  And getting

24  back to whether we've talked many times, the entities

25  all appear to be Mr. Stoller, so that we're talking

16

1    about claims against the bankruptcy estate on the one

2    hand, we're talking about claims against Mr. Stoller as

3    an individual post-conversion living the rest of his

4    life, on the other hand.  The second --

5              THE COURT:  Yeah, but --

6              MR. FOGEL:  -- part is what Google is going

7    after.

8              THE COURT:  Central Manufacturing is a

9    corporate entity?

10             MR. STOLLER:  Yes, in Delaware.  Yes, Judge,

11   it is.

12             THE COURT:  What do you think, Google?

13             MR. BARRETT:  Your Honor, I understand the

14   court made a finding of fact at the conversion trial

15   finding that these entities were inseparable from

16   Mr. Stoller himself.

17             THE COURT:  Well, they may be maybe

18   inseparable.

19             MS. ALWIN:  The debtor has also failed to

20   produce --

21             THE COURT:  In a piercing corporate veil

22   sense, but I was just asking whether or not it was

23   corporate entities.

24             MR. STOLLER:  They are.  I paid the franchise

25   fee for 20 years for each one of those corporations in

17

1   Delaware.  They exist.  All you have to do is go on the

2   computer and pull them up.

3                    MS. ALWIN:  Your Honor, as we've noted at

4   the --

5                    MR. FOGEL:  Your Honor, there is an entity in

6   Delaware called Central M-f-g, I want to say comma, Inc.

7   that is in good standing.  I've not seen a document that

8   in any way, shape, or form connects Mr. Stoller to that

9   entity.  He is not listed as the registered agent.  The

10  State of Delaware does not identify corporate officers.

11  I have not seen a stock certificate.  I've not seen a

12  record book.

13                   THE COURT:  Counsel --

14                   MR. FOGEL:  I've not seen a tax return.  I've

15  not seen anything.

16                   THE COURT:  Are you abandoning or not

17  abandoning your claims by reason -- against these

18  entities, whatever they are, by reason of his stock

19  ownership therein, if he has any stock ownership or any

20  other interest?  Are you abandoning the interest --

21                   MR. FOGEL:  No.

22                   THE COURT:  -- by reason of his relationship.

23                   MR. FOGEL:  No.  I am holding onto all

24  property of the estate at the moment while I continue --

25                   THE COURT:  Why are you not abandoning, if

18

1  you think it is valueless for the estate --

2            MR. FOGEL:  No.  I'm not asserting a claim

3  against Google, which I think is valueless for the

4  estate.

5            THE COURT:  Why are you not abandoning these

6  corporate --

7            MR. FOGEL:  They may, in turn -- they may, in

8  fact, turn out to be companies.  They may, in turn, turn

9  out to have assets.

10            THE COURT:  If they are, are you going to be

11  defending them in the Google lawsuit that they proposed

12  to file?

13            MR. FOGEL:  Not if they're not seeking any

14  monetary relief.  I can't --

15            THE COURT:  They seek relief against the

16  companies or with -- companies.  They do.

17            MR. STOLLER:  See, that's the rub, Your

18  Honor.  I can't have attorneys represent my

19  corporations.  They're going to consent to judgments

20  against my corporations.  Then they're going to throw me

21  to the wolves, and I'm going to have to defend myself in

22  a RICO action for what I think is basically not RICOish.

23            On the other hand, I don't have an

24  attorney and I can't afford an attorney to represent

25  myself.  So this is putting the debtor, in prejudicing

19

1  the debtor beyond what should be allowed under the law.

2  I can't represent my corporations with attorneys to

3  protect them and, therefore, I can't even represent

4  myself.

5              THE COURT:  I understand.  I'm perfectly

6  clear as to why you wanted the settlement which -- but

7  you're also, through this device, exposing the

8  corporations in which you claim an interest to damages

9  undefended.  And I don't understand that unless you want

10 to abandon your interests in --

11             MR. STOLLER:  And he's done that in every

12 case where I'm in litigation, Your Honor.

13             THE COURT:  Mr. Stoller, wait please.  Bear

14 with me one second.

15             MS. ALWIN:  Your Honor, part of the

16 settlement was a release of claims.

17             THE COURT:  Against who?

18             MS. ALWIN:  Google and the estate and the

19 entities, so we've resolved it.

20             THE COURT:  You mean, Google has released its

21 claims against the entities?

22             MS. ALWIN:  That's my understanding, Your

23 Honor.

24             THE COURT:  Counsel for Google, please?

25             MR. BARRETT:  Your Honor, I'm looking at the

20

1  relevant language right now in the agreement.  The

2  language is Google hereby releases and discharges

3  Stoller's bankruptcy estate and the trustee, as

4  representative of Stoller's bankruptcy estate, from any

5  and all claims.

6          THE COURT:  Not the entities.

7          MR. BARRETT:  It does not appear to

8  specifically include the entities.

9          MS. ALWIN:  There are no claims against the

10  entities.

11          THE COURT:  Counsel?

12          MS. ALWIN:  If I misspoke, Your Honor, my

13  apologies, but my understanding is --

14          THE COURT:  If it included the entities --

15          MS. ALWIN:  -- there are no claims then.

16          THE COURT:  -- then there's no reason for him

17  to file this shotgun suit.

18          MR. FOGEL:  The suit was drafted before the

19  settlement was reached.

20          THE COURT:  I know, but from what I just

21  heard, the entities are still liable and you want them

22  to go undefended even though you think that potentially

23  you may find out they had a value.

24          MR. STOLLER:  That's correct, Your Honor.

25          MR. BARRETT:  The relief sought by Google

21

1  against the entities in the settlement agreement is

2  injunctive relief.

3          THE COURT:  I'm sorry.  I was just looking at

4  this complaint.  I always take these requests for relief

5  kind of seriously.  You want treble damages.  You want

6  punitive damages.  You don't want -- you want much more

7  than an injunction against an entity that the trustee

8  wants to hold onto in case he can find some value there.

9  And yet the trustee does not intend to defend this,

10 defend the entities.  I don't understand that.  I'm not

11 sure I should modify the stay to permit -- to go after

12 the entities since the entities are part of the estate.

13         MR. FOGEL:  I don't see how entry of

14 injunctive relief against the entities would affect

15 their value.

16         THE COURT:  I assure you that punitive

17 damages would and treble damages would.

18         MR. FOGEL:  It's my understanding that Google

19 was not going to be seeking monetary relief against the

20 entities and was only going to pursue Mr. Stoller.  And

21 if I misunderstood the settlement then --

22         THE COURT:  Counsel, is all you want to do is

23 to get the injunction against the entities?

24         MR. BARRETT:  Your Honor, my understanding --

25 we're dealing with an issue I think that wasn't really

22

1   fully fleshed out in the settlement talks with the

2   trustee.

3          THE COURT:  I know.  And I know this draft

4   was prepared a long time ago.

5          MS. ALWIN:  Yes.

6          THE COURT:  I guess you had better think it

7   through; also me.  I'm prepared -- I've approved that

8   settlement and it makes sense for the estate, but now

9   I've got to see whether the form of the order here makes

10  sense and the extent to which I permit him to go forward

11  with litigation makes sense.

12         MR. FOGEL:  May we put this over so that

13  Mr. Barrett can confer with his lead counsel?  And

14  perhaps the fix is to have a revised proposed

15  complaint --

16         THE COURT:  Yes.

17         MR. FOGEL:  -- that will not be seeking the

18  type of relief that we're talking about.

19         THE COURT:  I think that may very well be.

20  Now, Mr. Stoller, based on your objection, it's going to

21  be overruled.  I'll tell you why.  There is good cause

22  here for allowing Google to go forward and sue you.  As

23  to whether he should be allowed to sue the entities, I'm

24  not so sure, but there is good cause to allow him to sue

25  you because that has nothing to do with this estate and

23

1  suing you won't hurt the estate and, therefore, I should

2  not in any way bar him from going forward.  There is

3  good cause.  He has certainly got an issue that ought to

4  be resolved somewhere, and I don't see why it should be

5  resolved in bankruptcy court at all.

6        MR. STOLLER:  Well, none of the predicate

7  acts of which he's trying to seeking relief, or

8  allegedly seeking relief and, of course, I deny all the

9  allegations in the complaint, you know, it's like taking

10 the captain of a ship and saying -- I'm not doing

11 anything.  You know, in other words, there is an

12 injunction by virtue --

13        THE COURT:  Well, you can argue that to

14 whatever court this is before.

15        MR. STOLLER:  But I'm just merely saying it

16 doesn't make any sense to shove me into an environment

17 when I'm in a bankruptcy proceeding, I'm trying to

18 resolve the bankruptcy, pay my creditors, and then I

19 would say, Judge, if I get out of this bankruptcy and I

20 pay my creditors and regain my corporations, I would

21 relish having the opportunity to defend it.

22        THE COURT:  At least you should understand

23 that there is good cause to show why they should go

24 ahead and be able to sue you on a matter not affecting

25 the bankruptcy to get injunctions.  Now as to how much

24

1  beyond that should I allow is the question that's still

2  open.  Okay?

3                  So when can we have you folks back

4  here?

5                  MR. FOGEL:  Your Honor, we have a pending

6  date in January, I think on the 11th, for some matters.

7  I don't know if there is a time between now and then

8  that we can get back before you.  I'm going to be out of

9  town.

10                 THE COURT:  Well, I can find some time if you

11  tell me when you want to come back here.

12                 MR. FOGEL:  Wait, January 11th is the 341.

13                 THE COURT:  I can find some time.  I will

14  just pick a date a week from now or 10 days from now.

15                 MR. FOGEL:  A week from now would work.

16                 THE COURT:  Okay.  Date please?

17                 THE CLERK:  January 19th at 10:30.

18                 THE COURT:  January?

19                 THE CLERK:  I'm sorry, December.

20                 THE COURT:  December 19th at what, 10:30?

21                 THE CLERK:  10:30.

22                 THE COURT:  For hearing on order and possible

23  limits to litigation -- to suit.

24                 May I continue to borrow your big black

25  book, please?

25

1          MR. BARRETT:  You you may, Your Honor.

2          THE COURT:  I don't know what happened to my

3   copy.

4              Now did you, Mr. Stoller, get a full

5   set of this big black binder?

6          MR. STOLLER:  I just received it, yes.

7          THE COURT:  All right.  There was a motion on

8   today, a trustee's motion to approve compromise of

9   Lanard Toys.

10          MS. ALWIN:  Yes.  I have a draft order to

11  follow, Your Honor.

12          THE COURT:  May I have it please?

13          MS. ALWIN:  Yes.

14          THE COURT:  I've overruled the debtor's

15  objection.

16          MR. FOGEL:  We've changed the language to

17  make it clear that the reference in that paragraph is

18  only to me on behalf of the estate and the related

19  entities and it's not applicable to Mr. Stoller.

20          THE COURT:  Which paragraph are you talking

21  about?

22          MR. FOGEL:  It's paragraph four of the --

23          THE COURT:  The language in the agreement you

24  mean?

25          MR. FOGEL:  Yes.

26

1          MS. ALWIN:   Yes.

2          MR. FOGEL:   Paragraph four of the agreement

3    is what Mr. Stoller's objecting to.

4          THE COURT:   Okay.

5          MR. FOGEL:   -- and make clear that I'm the

6    someone.

7          THE COURT:   So we -- get a copy of this order

8    to Mr. Stoller, please.

9          MR. FOGEL:   Yes, sir.

10          THE COURT:   Now I also have Mr. Stoller's

11    motion for permission to allow him to represent himself

12    and his corporate entities before the Trademark Trial

13    and Appeal Board.   What is the status of that?

14          MR. FOGEL:   Your Honor, the status of the

15    matters before the -- they are, I guess the word is they

16    are frozen pending further determinations in the

17    bankruptcy case as to what ultimately happens.   There

18    are, as you may recall Mr. Stoller said last week, you

19    know, over a thousand matters were filed to possibly

20    investigate whether or not there was a reason for him to

21    fight with any of the people that he was filing against.

22                    I would say this motion is similar to

23    the motion that he filed a couple of weeks ago that you

24    denied where he sought a declaration either that I had

25    abandoned my interest in the portfolio or that he should

1    be allowed to join the entities and the estate in the

2    appeal of the Pure Fishing case.  And I resisted the

3    motion.  I resisted that motion at that time --

4            THE COURT:  Is that procedure before the

5    Trademark Trial and Appeal Board --

6            MR. FOGEL:  No.

7            THE COURT:  -- Pure Fishing?

8            MR. FOGEL:  Pure Fishing is pending in the

9    district court before Judge Lindberg.  It has been

10   appealed to the Seventh Circuit by Mr. Stoller.

11              The matters before the Patent Trademark

12   Board involve a variety of other parties and, again,

13   until I have either reached some type of settlement with

14   Mr. Stoller or proceeded without settlement with

15   Mr. Stoller to deal with the intellectual property

16   portfolio, I am opposed to him being authorized to act

17   on behalf of the estate or on behalf of the entities.

18           THE COURT:  What I can do is to keep this

19   alive and see what happens.

20           MR. FOGEL:  I have no problem with entering

21   and continuance of this motion.

22           THE COURT:  Because your view is that the

23   proceeding is frozen.

24           MR. FOGEL:  Yes.

25           MR. STOLLER:  Your Honor, the last time we

28

1  were here one of the attorneys presented an action.  At

2  the Trademark Trial and Appeal Board -- and the last

3  time we were here you made your order in the Google case

4  predicated upon the fact that I may get my companies

5  back.

6           THE COURT:  Mr. Stoller, the trademark

7  procedure, is it going forward now or is it frozen

8  temporarily?

9           MR. STOLLER:  No.  They're going to be

10  dismissed and that's the urgency.  All my actions at the

11  Trademark Trial and Appeal Board of which there are 30

12  cases many of which I have been involved in for 10 years

13  or more, Judge, are now all destined to be dismissed.

14           THE COURT:  Mr. Stoller, do you have anything

15  to back up your contention that they're about to be --

16           MR. STOLLER:  Yes.

17           THE COURT:  I don't mean Stoller.  Trustee,

18  do you have anything that shows that they're frozen as

19  opposed to actively considering dismissal?

20           MS. ALWIN:  I believe it's the order attached

21  to Google's response.

22           MR. JOHNSON:  Your Honor, if I may interject

23  a moment on the Trademark Trial and Appeal Board

24  procedure.  An opposition is filed by a party who

25  believes they will be harmed by the granting of a

1   trademark registration.   There is an alternative

2   proceeding available.   If that registration has already

3   been granted, the one aggrieved can seek to have the mark

4   canceled.   The two are procedurally identical, merely a

5   difference in posture as to whether the application has

6   been registered or whether the registration will be

7   canceled.

8           MR. STOLLER:   What happened the last time we

9   were here, the board issued an order which was tendered

10  to you.   In that order the Trademark Trial and Appeal

11  Board dismissed a case which the trustee entered into an

12  agreement to dismiss the case with and I merely filed a

13  notice before the Trademark Trial and Appeal Board,

14  Judge, to advise them that the case was on appeal and

15  not to -- to put them in the stay position.

16          The board issued a decision saying,

17  "Stoller has no authority to respond," and then

18  dismissed the action.   That single decision which was

19  tendered to you last time is now being used by all my

20  opponents so that all of my decisions, all of the 30

21  pending oppositions will be dismissed based on that

22  board decision.   I need to go back to the TTAB.   I went

23  in good faith and tried to contact Mr. Fogel and asked

24  him if he would give me authority so I could go back to

25  the board and say, "No, I do have the authority."

30

1           I'm not looking to litigate the cases
2    over there.  I'm merely looking to advise the board that
3    we are -- that these decisions are on appeal and they
4    should be stayed pending my appeal.
5           THE COURT:  What decisions are on appeal?
6           MR. STOLLER:  Pardon me?
7           THE COURT:  What was handed to me now is a
8    letter from the Patent Trademark office to you dated
9    July 14, '06.
10          MR. STOLLER:  That's just a sanction order.
11   That has nothing to do --
12          THE COURT:  It determines that you have not
13   made a showing that you have a colorable claim of
14   damages justifying the extension request that you filed.
15          MR. STOLLER:  You're being -- there is an
16   attempt to confuse the court.  That decision, that was a
17   sanction order based on my filing a series of requests
18   to -- requests for extensions of time to file in
19   opposition.  That does absolutely nothing with the 30
20   pending initiated opposition proceedings.  The
21   criticality of it is if I'm going to get my companies
22   back, I want my oppositions in the same position they
23   were at the time this proceeding began.
24          Mr. Lance Johnson's allegation to you
25   that I could then now go back and refile 30 or 40 cases,

31

1   pay those filing fees, and then litigate under the

2   theory that a petition to cancel is the same as an

3   opposition is not the case.   There is a different

4   standard.

5           All I want is that the board suspend

6   everything, like the trustee said, pending the

7   resolution of these issues so that if we can reach an

8   amicable resolution, I pay my creditors, I get my

9   companies back, everything is stayed.   Right now the

10  board has said, "Stoller has no authority."   I've

11  received letters from other counsel using that last

12  decision by the board and they're going to dismiss all

13  30 of them which would never allow me to be made whole

14  again.

15          THE COURT:   Trustee, have you filed anything

16  in that proceeding?

17          MR. FOGEL:   Yes, and let me clarify it there.

18  I think maybe what Mr. Stoller is looking for may, in

19  fact, be available to him.   After Judge Lindberg entered

20  his opinion in the Pure Fishing case in the district

21  court dealing with the Stealth marks that Mr. Stoller

22  has the fights with before the Patent Trademark Board, I

23  entered into a joint motion to dismiss in opposition

24  without prejudice.

25          THE COURT:   Pertaining to Pure?

32

1          MR. FOGEL:  Pertaining to another entity.

2          THE COURT:  Just one?

3          MR. FOGEL:  I believe one.

4          MR. STOLLER:  He entered three of them.  He

5   dismissed three of my cases.

6          MR. FOGEL:  I thought only one of them had

7   actually been --

8          THE COURT:  Has it been dismissed?

9          MR. STOLLER:  Three.

10         MR. FOGEL:  I believe one of them has.  And

11  as soon as Mr. Stoller filed his notice of appeal of the

12  Pure Fishing action, I decided to stand still and take

13  no actions before the Patent and Trademark Board.

14         THE COURT:  Mr. Stoller, let me ask, are

15  these cases where you claim some interest in what other

16  people say are their trademarks or patents?

17         MR. STOLLER:  It's a claim where my company

18  held rights and does the 35 Stealth federal trademark

19  registrations.  We have 35.

20         THE COURT:  Mr. Stoller, are these

21  proceedings where you claim an interest in certain

22  trademarks that other companies are using?

23         MR. STOLLER:  I claim an interest in the

24  trademarks that I own, 35.  A company will file an

25  application for a trademark.

33

1          THE COURT:  You don't want to answer my

2    question.

3          MR. STOLLER:  I am answering it.

4          THE COURT:  No, you're not.  I asked you

5    whether you're claiming rights in trademarks that other

6    companies are using.

7          MR. STOLLER:  Yes, I am.

8          THE COURT:  And do you contend that you used

9    the -- that you obtained the trademarks first?

10          MR. STOLLER:  I have 35 that I've obtained

11    since 1981.

12          THE COURT:  First, before they started to use

13    them?

14          MR. STOLLER:  Yes.  And these cases are not

15    being dismissed by the board summarily.  They're motions

16    to dismiss.  They're being litigated.  And I need to be

17    able to defend my trademarks.

18               Now the only thing I'm looking for,

19    Judge, the only thing here is to go back to the board

20    and say, "No, they should be stayed."  I should have the

21    right to write them a letter and say they should be

22    stayed pending what appeals you said, the Pure Fishing

23    appeal and my appeal in this case.  That's all I'm

24    looking for.

25          THE COURT:  Let me say to the trustee, it may

34

1   very well be that Mr. Stoller is misusing his rights
2   under the patent system.  It may very well be that it
3   would be a better world if he were stopped.  I am not
4   here to make that decision.  It may very well be that
5   some other court or agency ought to make that decision.
6   I just don't think that if the trustee is not claiming
7   any property rights that the bankruptcy should be used
8   to prevent Mr. Stoller from litigating whatever he
9   thinks his rights are.  So I'm a little troubled by --
10           MR. FOGEL:  I'm a little troubled, too.  But
11   if he would show me any documents, if he would give me
12   any cooperation along the lines that would enable me to
13   make intelligent decisions --
14           THE COURT:  He has this problem because he's
15   asserted the Fifth Amendment.  He's not cooperated with
16   you and he complains that you're moving slowly and are
17   not proceeding to take some dispositive action that will
18   allow him to get back control of his business.  And, of
19   course, I understand that once a trustee is faced by a
20   proper assertion of a Fifth Amendment, if it be proper,
21   that does slow the trustee down.  I understand that on
22   the other side as well.  But, generally speaking, one
23   may punish themselves by asserting the Fifth Amendment,
24   but one may not be punished for asserting the Fifth
25   Amendment properly.

35

1          MR. FOGEL:  Your Honor, I --

2          THE COURT:  Now where are we here?  What I'd

3  like to see happen is that whatever you do and whatever

4  I do freezes the proceedings.

5          MR. FOGEL:  That's what I'm trying to do.

6  I'm trying to maintain the status quo.  I am not seeking

7  dismissal of any matters, and I will be happy to

8  notify --

9          THE COURT:  I want you to think about that as

10  to how we can arrive at that as opposed to allowing him

11  to represent his agencies or himself in matters.

12          MR. FOGEL:  I can't stop him from

13  representing himself.

14          THE COURT:  Yes, you can, because the claim

15  is a claim of the estate.

16          MR. FOGEL:  Well, if it's a claim of the

17  estate, then it's mine to assert.

18          THE COURT:  Yes, it is.  And you could

19  abandon it, or you could assert it, or you could try to

20  freeze it while you evaluate it.

21          MR. FOGEL:  That's what I'm pretty much doing

22  I believe.  I'm not doing things with any prejudice.

23  Anything I've done to date has been without prejudice.

24          THE COURT:  Until you abandon it.

25          MR. FOGEL:  And I'm not going to do anything

36

1   else before the Patent Trademark Board until either I
2   reach settlement with Mr. Stoller or until the appeal
3   before Judge Lindberg is litigated out.

4               THE COURT:  Okay.  But basically on his
5   motion I think you ought to take the view you're either
6   going to prosecute those claims, or abandon them, or ask
7   that they be frozen.

8               MR. FOGEL:  That's what I'm telling you.  I
9   want them to be frozen for now.

10              THE COURT:  If they are frozen, then I'm
11  certainly not going to let him represent an asset of the
12  estate that you have not been able to evaluate yet.

13              MR. FOGEL:  I'm happy to notify the general
14  counsel of the patent --

15              THE COURT:  I'm fully aware also of a dilemma
16  that it seems to me you probably have.  If you suspect
17  that a lot of these claims that he has made are phony,
18  you probably don't want to be asserting them if that's
19  your belief.

20              MR. FOGEL:  Thank you, Judge.

21              THE COURT:  And so you have a dilemma because
22  you can't evaluate.  So you're reluctant to abandon and
23  you're reluctant to prosecute.

24              MR. FOGEL:  I will say that I did have a good
25  conversation with Mr. Stoller yesterday.  And I don't

1  know where it will go, but I'm going to talk to him

2  again.  So I'd like to maybe put this over and I will

3  represent to Mr. Stoller and to the court --

4          THE COURT:  -- the 19th to see if we can

5  approach this problem that way.

6          MR. FOGEL:  Fine.

7          MR. STOLLER:  Your Honor, could I make one

8  suggestion?  In this one case we only have about 20

9  days.  I would like to talk to Mr. Fogel.

10          THE COURT:  Well, 7 days is shorter than 20.

11          MR. STOLLER:  I'm saying in terms of

12  notifying the board that this one action shouldn't be

13  dismissed, I'd like to be able to --

14          THE COURT:  You say you have 20 days, but

15  I'll be back here on the 19th with you and let's see

16  what we can do.

17          MR. STOLLER:  Okay.

18          THE COURT:  The debtor's response to a motion

19  of Pure Fishing to extend the date, this was filed

20  December 5.  Haven't I --

21          MR. FOGEL:  You ruled on it.

22          THE COURT:  -- ordered -- I ruled on that.

23          MR. FOGEL:  You entered that order.  There is

24  one last matter for today.  As part of the objection

25  that Mr. Stoller filed to one of the settlement motions,

38

1  he asked that I be disqualified as trustee.

2          THE COURT:  I thought I ruled on that.

3          MR. FOGEL:  You did.

4          THE COURT:  I thought I orally ruled on that.

5          MR. FOGEL:  It was draft order to follow so

6  that we could draft an order that I believe reflects

7  what you said that he didn't show cause to remove me.

8          THE COURT:  Right.

9          MR. STOLLER:  I would like to have a copy of

10 that, too.

11         THE COURT:  Yes, please.  Get him a copy of

12 that.  I've signed that.  I'll see you folks on the

13 19th.

14         MR. FOGEL:  Thank you very much.

15         MR. STOLLER:  Thank you, Judge.

16                     (Which were all the proceedings

17                     had in the above-entitled cause

18                     as of December 12, 2006.)

19

20

21 I, Barbara A. Casey, do hereby

22 certify that the foregoing is

23 a true and accurate transcript

24 of proceedings had in the

25 above-entitled cause.